| 92   225
| 101  463

BYRON P. CARTER and another vs. HENRY CLARK.

Hancock.    Opinion December 3, 1898.

*Deed. Description. Monuments. Evidence. Disseizin.    Taxes.*

The description in a deed was: "Beginning at the head of South West Harbor in Mt. Desert aforesaid, the corner bound on the shore between said lot and Isaac Mayo's lot and follows the shore southerly to the corner of Jonathan Brown's lot; thence follows said Brown's and Mayo's lines westerly to the head of said lot which is called Cockle's lot." *Held;* that the description is not uncertain.

It is permissible for a witness, having knowledge, to testify whether the lines described in a deed, when applied to the face of the earth, actually surround the lot. Parol evidence is always admissible to locate the monuments and boundaries in a deed.

It is not objectionable for a witness to testify whether a certain fence is on or near the northern line of the "Byron Carter place," especially when nothing appears to show that the excepting party is prejudiced by the answer.

When the predecessor in title of one claiming by disseizin had stated that the property assessed to him in the valuation books of the town was all the property he owned, and it appeared by the books that the locus in question was not assessed to him, the books are admissible to show the extent of his disclaimer, and his statements in disparagement of his title are admissible against his successor.

When one in possession of land pays taxes upon it, that fact has some tendency to show the character of the occupation. It is an act of ownership. And in such case, when it is proper to show the payment of taxes, it is also proper to show by the valuation upon what property taxes were paid.

A preliminary question, such as "I will ask you, in the first place, where the homestead of A is?" is harmless in character, and unobjectionable.

When a witness has testified to admissions made by a party at a certain time, it is not competent, on cross-examination, to show that the party made a contrary, and a self-serving statement, at another time.

When title by adverse possession is in issue, and the proof of occupation and its character are material, if a party claims that he has paid the taxes upon the locus, assessed to him as a part of his "homestead," he may show, as one step in his proof, that it was not assessed to any one else.

When a party claims by adverse possession, the fact that the selectmen of the town knew of his claim, and recognized it by an article in a warrant for a town meeting, is inadmissible. This would only prove notoriety of claim, and not notoriety of occupation.

VOL. XCII.    15

It is notorious occupation which is one of the elements necessary to constitute a title by adverse possession. It is not proved by reputation. Notoriety of occupation is not to be inferred from notoriety of claim.

ON EXCEPTIONS BY DEFENDANT.

The case appears in the opinion.

*L. B. Deasey*, for plaintiffs.

*H. E. Hamlin* (*E. Webster French* with him) for defendant.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

SAVAGE, J. Real action. Nine exceptions are reserved, each relating to the admission or exclusion of evidence.

I. The defendant objected to the admission of two deeds in the plaintiff's chain of title, on the ground that the description was incomplete and did not cover the locus. He contends in argument that the deeds give only two of the four boundary lines. We do not think so. The description (substantially the same in both deeds) is: "Beginning at the head of Southwest Harbor in Mt. Desert aforesaid, the corner bound on the shore between said lot and Isaac Mayo's lot and follows the shore southerly to the corner of Jonathan Brown's lot; thence follows said Brown's and Mayo's lines westerly to the head of said lot which is called Cockle's lot." The language used is inartificial, but not uncertain. The shore line extends from Mayo's lot to Brown's lot. The side lines are "Brown's and Mayo's lines." And the inland end boundary is "Cockle's lot."

II. A witness was asked with reference to the same deeds, "Whether those four lines, 'the said Mayo's', referring to Isaac Mayo, the line of the shore, the said Brown line, and the head line go all around the locus?" and subject to objection, was permitted to answer. The question called for the knowledge of the witness as to whether the lines described in the deed, when applied to the face of the earth, actually surrounded the lot. It called for a fact, not an opinion. Parol evidence is always admissible to locate the

monuments and boundaries in a deed. *Brown* v. *Haven*, 12 Maine, 164; *Wing* v. *Burgis*, 13 Maine, 111; *Emery* v. *Webster*, 42 Maine, 204; *Abbott* v. *Abbott*, 51 Maine, 575; *Simpson* v. *Blaisdell*, 85 Maine, 199.

III. The plaintiff was permitted to ask a witness the following question: "Was this fence on or near the northern line of the Byron Carter place?" The defendant's objection is that the northern line of the Byron Carter place was a question for the jury to establish, and not the witness. The phrase "Byron Carter place" assumes that there was a tract of land known by that name. It was competent for any witness having knowledge, to testify as to the geographical limits of that "place," and as to the position of a fence or other object relative to a boundary of that "place." Whether the boundary of the "place" and of the locus in question were coterminous was for the jury, if the matter was relevant to the issue. The question whether the witness was qualified to answer the inquiry was addressed to the presiding justice. Moreover, nothing appears in the bill of exceptions to show that the question and answer were prejudicial to the defendant. *Harriman* v. *Sanger*, 67 Maine, 442.

IV. The plaintiff showed that the valuation books of the town of Tremont from 1882 to 1897 inclusive, except 1884 and 1892, had been exhibited to Henry H. Clark, the defendant's predecessor in title, in connection with the assessment of the tax for the year following the date of the book in each case; and that the list of Clark's property in each book was read to him or by him, and that in every case he said he had no other property. The plaintiff then offered the books in evidence, and they were admitted. The locus was not included in the list of Clark's property in any one of the books. We think they were clearly admissible. The defendant's claim is that Henry H. Clark was the owner of the locus during the prescribed period covered by the books, by grant and by disseizin. The admissions of Henry H. Clark in disparagement of his title were admissible against the defendant. *Parker* v. *Marston*, 34 Maine, 386; *McLanathan* v. *Patten*, 39 Maine, 142; *Royal* v.

*Chandler*, 81 Maine, 118. The statement of Henry H. Clark that he had no property other than that contained in his lists in the valuation books had some tendency to show that he did not claim title to the locus, for it was not included in his lists. The books were admissible to show the latter fact, for the books became in fact a part of his statement, his admission. They were admissable to show to what extent he disclaimed the ownership of property, and whether his disclaimer covered the locus. The weight and effect of his statement were wholly for the jury.

V. The plaintiff, subject to objection, was permitted to introduce the valuation books of the town of Tremont for the years 1882 to 1897 inclusive, "so far as they relate to the property of Byron Carter, the plaintiff." And without objection, he introduced evidence of the payment by himself of all taxes so far as the assessment to the plaintiff was shown. In this connection, it does not appear whether the locus was or was not assessed to Byron Carter. If the payment of taxes by the plaintiff was material, then we think it was proper to show by the books what the property was for which he was assessed. Whether the payment of taxes was material or not, we are unable to determine from the facts stated in the case. When one in possession of land pays the taxes upon it, that fact has some tendency to show the character of his occupation. It is an act of ownership. Whether the character of the occupation of this locus by either of these parties was in question, we are unable to say. It is the duty of the excepting party to set out enough in his bill of exceptions to show affirmatively that the ruling is erroneous. *Darling* v. *Dodge*, 36 Maine, 370; *Pollard* v. *Maine Central R. R. Co.*, 87 Maine, 51.

VI. The plaintiffs' counsel was permitted, against objection, to ask a witness, one of the assessors, the following: "I call your attention to the fact that there is assessed to the heirs of Roland Carter a homestead of forty acres, and will ask you *in the first place*, where the homestead of Roland Carter taxed there, is?" This question appears to be preliminary in its character, and whether material or not, is entirely harmless.

VII. In the direct examination of a witness for the plaintiff, the witness testified in substance that while he was an assessor of the town of Tremont, and after the death of Henry H. Clark, he went to the defendant to get a list of his property for purposes of taxation, and that the defendant did not at that time make any claim of ownership of the locus. On cross-examination of the same witness, the defendant offered to show by him that on another near occasion, and while the witness was still an assessor, in a statement made in his presence, but not directed to him as assessor, the defendant claimed to own the property in question. This offer was excluded. Such a statement, if made by the defendant, was self-serving, a declaration in his own interest, and clearly inadmissible as original, substantive evidence. Nor was it admissible in rebuttal. The offer related to a conversation other than the one previously testified to by the witness. If the defendant had made a contradictory statement at another time, proof of that fact would have no tendency to rebut the testimony of this witness as to his declarations, or want of declarations, at the time in question.

VIII. One of the issues at the trial was whether the defendant had acquired title by adverse possession. The locus was not specifically described and taxed to the plaintiff. The plaintiff claimed that it was part of his homestead; that it was taxed as such, and that he had paid the taxes upon it. As having a tendency to show that it was taxed to him as a part of his homestead, the plaintiff offered the valuation books of the town, to show that the locus was not taxed to any one else. We have already discussed the admissibility of the payment of taxes as an act showing the character of possession. Assuming, as we must in considering this exception, that such fact was material, it was for the plaintiff to show, if he could, that he had paid the taxes on this particular locus. This he might do by exhibiting the description in the valuation books, of the land for which he was taxed. If this description was clear and explicit, it might be sufficient. Or if a general term, as "farm" or "homestead" was used, the situation of the

locus relative to the other parcels claimed to make up the "farm" or "homestead," and its customary use in connection with them, would be admissible to show how much was included under either of these terms. *Morrell* v. *Cook*, 35 Maine, 207. And for the same purpose, in connection with such surrounding facts and circumstances, we think it may be shown that this particular land was not taxed to any one else. The inference may be remote, but we cannot say that the evidence has no tendency to prove this issue, for there is some presumption, of greater or less force, that all land is taxed to somebody; and the exclusion of all others to whom it might be taxed, taken with other circumstances, might be sufficient to warrant a jury in believing, in this case, that this land was included in the homestead taxed to the plaintiff.

IX. Under his claim by adverse possession, in order to show the notoriety of the occupation of the locus by Henry H. Clark, his predecessor, the defendant offered in evidence an article in the warrant for the town meeting in Tremont in 1884, namely, "To see if the town will vote to pay H. H. Clark damages done by road commissioners to his log landing at the head of South West Harbor in 1883." The evidence was excluded. The same article was then offered for the purpose of showing that the selectmen and assessors knew what Mr. Clark's claim to the property was; and again it was excluded. We do not think the defendant was aggrieved by the rulings of the presiding justice. It is a sufficient answer to the defendant's position to say that the offered evidence, if not objectionable on other grounds, would only tend, at the most, to show notoriety of claim, and not notoriety of occupation. It is notorious occupation which is one of the elements necessary to constitute a title by adverse possession. The occupation must be so notorious that the owner may be presumed to have knowledge that it is adverse. *Morse* v. *Williams*, 62 Maine, 445. But there is no such thing as constructive notoriety of occupation to be inferred from notoriety of claim. It is actual, notorious occupation. It is not proved by reputation, no matter how extensive and notorious. It must be proved by the character of the occu-

pation itself. *Howland* v. *Crocker*, 7 Allen, 153. The fact that the selectmen of the town knew of the claim of H. H. Clark, or that they recognized it in an article inserted in a warrant for a town meeting, would have no tendency to show that he occupied the locus, or, if he occupied it, that the occupation was notorious.

We discover no error in the rulings of the justice presiding, and all the exceptions must be overruled.

*Exceptions overruled.*